IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KRISTINE A.,[1]                                    No. 3:17-cv-01856-HZ

                    Plaintiff,                     OPINION & ORDER

        v.

COMMISSIONER, Social Security
Administration,

                    Defendant.


HERNÁNDEZ, District Judge:

        Plaintiff brings this action for judicial review of the Commissioner's final decision

denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

§ 1382(c)(3)). The Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

<u>BACKGROUND</u>

Plaintiff was born on December 5, 1973 and was thirty-nine years old on July 31, 2013, the alleged disability onset date. Tr. 16, 26.[2] Plaintiff has at least a high school education but is unable to perform any past relevant work. Tr. 26. Plaintiff claims she is disabled based on, among other things, fibromyalgia, bipolar disorder, posttraumatic stress disorder, and generalized anxiety disorder.

Plaintiff filed a prior application for disability insurance benefits on January 20, 2011 and a prior application for supplemental security income on February 18, 2011. Tr. 16. These applications were denied initially on July 26, 2011, and upon reconsideration on December 27, 2011. Tr. 16. A hearing was held before Administrative Law Judge Steve Lynch on May 21, 2013. Tr. 16, 33–57. ALJ Lynch issued a written decision on May 31, 2013, finding that Plaintiff was not disabled or entitled to benefits. Tr. 16. Plaintiff failed to file a timely request for review, rendering ALJ Lynch's decision the Commissioner's final decision.

On June 11, 2014, Plaintiff protectively filed this application for supplemental security income. The claim was denied initially on August 21, 2014, and upon reconsideration on February 13, 2015. Tr. 16. A hearing was held before Administrative Law Judge Hoenninger. Tr. 16, 58–82. ALJ Hoenninger issued a written decision on February 17, 2017, finding that Plaintiff was not disabled or entitled to benefits. The Appeals Council declined review, rending ALJ Hoenninger's decision the Commissioner's final decision that Plaintiff now challenges before this Court. Tr. 1–6.

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 12.

<u>SEQUENTIAL DISABILITY ANALYSIS</u>

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

<u>THE ALJ'S DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 18.

At step two, the ALJ determined that Plaintiff had "the following severe impairments: Fibromyalgia, obesity, degenerative joint disease of the bilateral knees, bilateral carpal tunnel syndrome, and affective disorder and an anxiety disorder." Tr. 18–19. The ALJ also determined that Plaintiff's "headaches/occipital neuralgia, degenerative disc disease of the cervical and lumbar spine, and bilateral hearing loss" were not severe. Tr. 19 (citations to the record omitted).

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19–21. Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with the following exceptions:

> She can frequently climb ramps and stairs. She can frequently climb ladders, ropes and scaffold. She can frequently stoop, kneel, crouch, and craw. She can frequently handle and finger bilaterally. She can understand and remember simple instructions. She has sufficient concentration, persistence and pace to complete simple entry-level tasks. She can occasionally interact with the general public and coworkers.

Tr. 21.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work, either as a health care provider or a sales assistant. Tr. 26. At step five, the ALJ relied on the testimony of a vocational expert to find that there were jobs that existed in significant

numbers in the national economy that Plaintiff could have performed. Tr. 26–27. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises three issues on appeal. She argues the ALJ erred by: (1) knowingly causing a prohibited ex parte communication; (2) giving great weight to the Cooperative Disability Investigations Unit (CDIU)'s report and rejecting the opinions of treating and examining providers; and (3) failing to identify Plaintiff's headaches and lumbar degenerative disease as severe impairments.

### I.    CDIU Report

On October 5, 2016, Plaintiff appeared at a hearing before ALJ Hoenninger. On October 21, 2016, the Cooperative Disability Investigations Unit (CDIU) received an anonymous referral

and opened a fraud investigation into Plaintiff's claims. Plaintiff argues the anonymous referral must have been made by either the ALJ or someone acting under her authority because (1) the referral source knew details that only someone in the Social Security Administration would know, and (2) the timing suggests "that the referral was made in response to [Plaintiff's] hearing as a means to generate additional evidence of her limitations." Pl.'s Br. 6.

Plaintiff argues that the CDIU report should be stricken from the record because it constitutes an improper ex part contact and an abuse of the ALJ's discretion. Specifically, Plaintiff argues that initiation of the investigation violated the prohibitions on ex parte contacts espoused by the Oregon Code of Judicial Conduct, the ABA Code of Judicial Conduct, and 5 U.S.C. § 557(d)(1)(B) because (1) the investigation was trigged by a referral from the ALJ or someone acting under her authority; (2) the CDIU operates on behalf of the SSA; and (3) Plaintiff was represented at the time of the investigation but counsel was not notified or present for the investigation. Plaintiff further argues the ALJ abused her discretion in making this referral because the record was already developed and the action violated both internal policies (such as the SSR 16-3p and the Hearings, Appeals, and Litigation manual (HALLEX) 1-3-3-2 (A)) and codes of judicial conduct.

As a preliminary matter, an ALJ may rely on evidence related to a CDIU investigation. *Elmore v. Colvin*, 617 F. App'x 755, 757 (9th Cir. 2015). "The Social Security Act expressly authorizes the Commissioner to 'conduct such investigations and other proceedings as the Commissioner may deem necessary or proper.'" *Id.* (quoting 42 U.S.C. § 405(b)(1)). The HALLAX I-1-3-18 also *specifically* authorizes ALJs to request CDIU investigations. However, this authorization is not without limit. Where courts have upheld an ALJ's reliance on a CDIU report, the plaintiff had notice of the report and a meaningful opportunity to challenge it. *See*

*e.g.*, *Ogannesyan v. Colvin*, 2016 WL 2982182 (C.D. Cal. May 23, 2016) (not fundamentally unfair for ALJ to rely on report when Plaintiff presumably had a copy before the hearing and was told he could subpoena witnesses involved in the report); *Manor v. Astrue*, 2011 WL 3563687 (D. Wash. July 28, 2011) (not fundamentally unfair for ALJ to rely on report where claimant "had ample opportunity to challenge the CDIU report—and did, in fact, challenge it twice"); *Robert v. Astrue*, 688 F.Supp.2d 29 (D. Mass. 2010) ("[T]o the extent a report provides factual rather than interpretive data, and to the extent the administrative law judge provides the claimant with an opportunity to address the report . . . the report may be given appropriate weight based on all the circumstances.").

Notice and a meaningful opportunity to be heard are the "hallmarks of procedural due process" and apply to social security disability determinations. For example, in *Ludwin v. Astrue*, the Ninth Circuit examined a "troubling" ex parte contact. 681 F.3d 1047 (9th Cir. 2012). There, an FBI agent privately told an ALJ, outside of the disability determination hearing, that he had observed a claimant faking symptoms. *Id.* at 1052. Even though the ALJ promptly disclosed the statement to claimant's counsel, the court concluded that the ALJ erred in allowing the FBI agent to speak to him outside the presence of counsel, with no opportunity for counsel to cross-examine the agent, and no assurance that the communication had no influence on the ultimate decision. *Id.* at 1053. The court noted that "Congress has commanded that the ALJ's decision be 'on the basis of evidence adduced at the hearing.'" *Id.* at 1052 (citing 42 U.S.C. § 405(b)(1) (providing that if a hearing is held, the Commissioner of Social Security "shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse the Commissioner's findings of fact and [initial disability] decision") and 20 C.F.R. § 404.953(a) (providing that the "administrative law judge must base [its] decision on the preponderance of the evidence offered at the hearing or

otherwise included in the record ")). "Notice and [a meaningful] opportunity to be heard are the hallmarks of procedural due process," and though plaintiff had notice of the evidence against him, he was not given a meaningful opportunity to be heard on it. *Id.* at 1053 (quoting *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989)). The court also noted, however, that this finding was subject to a harmless error analysis. *Id.*

Here, the Court need not address whether the ALJ engaged in an improper ex parte contact because Plaintiff has not presented sufficient evidence that the ALJ—or someone acting under her authority—referred the case to the CDIU for further investigation. Moreover, the ALJ did not err in relying on the report, as she first provided Plaintiff with notice and a meaningful opportunity to be heard on it. The hearing in this case occurred on October 5, 2016. A CDIU investigation was initiated on October 21, 2016 and a report generated on November 4, 2016. Tr. 721, 728. On November 16, 2106, the ALJ provided Plaintiff's counsel with a link to the CDIU report and notice that it would be entered into the record if counsel did not respond. Tr. 276. She also advised counsel that Plaintiff had the right to submit a written statement, or request a supplemental hearing with the opportunity to question witnesses. *Id.* ALJ Hoenninger issued her decision, finding Plaintiff not disabled, on February 14, 2017. On the record before the Court, it does not appear that Plaintiff objected to or challenged the report. In her briefing, Plaintiff does not argue a lack of notice or a meaningful opportunity to challenge. Due process does not require more. The ALJ did not, therefore, err in relying on the report.

## II.    Medical Opinion Testimony

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight

is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Id.* at 1161; *Orn*, 495 F.3d at 632–33. "These factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Ghanim*, 763 F.3d at 1161 (quoting 20 C.F.R. § 404.1527(c)(2)-(6)).

Plaintiff first argues that the ALJ gave too much weight to the CDIU report. The ALJ used this report—created by a non-medical professional—to reject the opinions of several

medical professionals. Plaintiff identifies these medical opinions, states they are consistent with the medical record, and argues that had the ALJ "given the medical opinions appropriate weight, she would have most likely found [Plaintiff] disabled." Pl.'s Br. 10. In her reply, Plaintiff identifies four specific providers and explains why their medical opinions were improperly rejected. The Court agrees; the ALJ has failed to identify specific and legitimate reasons for affording little weight to each identified opinion.

### 1. **Dr. Burns, PhD**

Dr. Burns performed a psychological evaluation in June 2014. Tr. 24. He opined, in part, that Plaintiff had significant memory deficits and "would be unable to adhere to the minimum standards of attendance, concentration, persistence and pace; she would not be able to get along with co-workers; and she would not be able to interact appropriately with the public." Tr. 24.

The ALJ identified two reasons for giving Dr. Burns' opinion little weight: (1) there was an internal "inconsistency" between Dr. Burns' observations and Plaintiff's profile on the Personality Assessment Inventory that "calls into question the efficacy of the assessment Dr. Burns provided," and (2) Dr. Burns' opinion was inconsistent with the CDIU report. Tr. 24.

Regarding the internal "inconsistency," the ALJ stated that while Dr. Burns noted "no signs of symptoms exaggeration or malingering," a "Personality Assessment Inventory suggested mild exaggeration of complaints and problems." Tr. 24. However, the Personality Assessment Inventory does not state or suggest that Plaintiff actually exaggerated any of her complaints. Rather, Dr. Burns' description of the inventory result reads in full:

> On a personality assessment inventory, [Plaintiff] achieved a profile suggesting the *possibility* of a mild exaggeration of complaints and problems. The clinical interpretive report noted: elevations in this range are often indicative of a 'cry for help' or of a markedly negative evaluation of oneself and one's life.

Tr. 435 (emphasis added). At most, this highlights the possibility of mild exaggeration. It is not a finding that Plaintiff *was* exaggerating. In fact, Dr. Burns addresses this point directly, concluding that, based his observations and interactions with Plaintiff, "there were no signs of symptom exaggeration or of malingering," and again that Plaintiff "did not appear at all to be exaggerating her difficulties during my administration to her of the Wechsler Memory Scale IV." Tr. 434, 436.[3] There is no direct conflict between the personality assessment inventory—which highlights a possibility of mild exaggeration, "indicative of a 'cry for help' or of a markedly negative evaluation of oneself and one's life"—and Dr. Burns' conclusion that Plaintiff did not exhibit any signs of actual exaggeration during their interactions. Even if there was a direct conflict, this is not a valid reason to "question the efficacy" of the entire assessment and therefore disregard Dr. Burns' entire report (which was based on in person observations, a review of medical records, and the results various psychological tests).

With regard to the CDIU report, the ALJ simply stated that Dr. Burns' "description of the claimant as being severely impacted by mental health symptoms is . . . inconsistent with the CDIU investigation report, which demonstrates that claimant is more capable than he opined." Tr. 24. First, the ALJ did not identify these purported inconsistencies. Second, Dr. Burns is a mental health provider trained to assess mental health limitations. As such, he is in a better position than an investigator to assess Plaintiff's functional mental health limitations. *See Yeakey v. Colvin*, 2016 WL 4649653, *4 (W.D. Wash. Sept. 7, 2016) (doctor, as a trained mental health provider, was in a better position than an investigator to assess Plaintiff's functional mental health limitations). The "blanket" reason that the opinion is inconsistent with the CDIU report

---

[3] To the extent the ALJ may not believe the statements Plaintiff made to Dr. Burns, the Court notes that an ALJ may not reject an "examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008).

cannot alone support the ALJ's decision to discount Dr. Burns' opinion. *See id.* at *4. The ALJ therefore failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for affording Dr. Burns' opinion little weight.

### 2. Dr. Shook, MD

Dr. Shook is Plaintiff's treating physician. In September 2016, Dr. Shook opined, in part, that Plaintiff was limited to standing or walking five minutes at a time, less than two hours per day. Tr. 24. He also opined that Plaintiff suffered from severe headaches about once a week that lasted up to thirty-six hours. Tr. 24. The ALJ gave this opinion "little weight." Tr. 24. The ALJ identified two reasons for this conclusion: First, with regard to the walking and standing limitations, Dr. Shook's opinion was inconsistent with the CDIU report and his own treatment records, which documented "normal gait and normal muscle strength." Tr. 24. Second, with regard to Plaintiff's headaches, Dr. Shook's opinion was based solely on subjective self-reports, and these self-reports were unreliable because other evidence showed Plaintiff had "at the least, a tendency to exaggerate her symptoms (Ex. B7F/11)." Tr. 24.

Dr. Shook's opinion about Plaintiff's limited ability to walk and/or stand is not inconsistent with his treatment records. The ALJ has not offered any explanation or identified any medical evidence to suggest that a normal gait and normal muscle strength—the only "inconsistencies" cited—are, in fact, inconsistent with Dr. Shook's opinion that Plaintiff could only stand and/or walk for five minutes at a time. Indeed, there is no medical evidence in the record to suggest that Plaintiff's subjectively-documented pain or objectively-documented medical impairments would, or should, manifest in an altered gait. Moreover, the Court found no reference to "normal muscle strength" in the ALJ's citation. Overall, Dr. Shook's treatment records—based on Plaintiff's self-reports, consistent positive straight leg tests, and objective

medical testing—document chronic pain related to, among other things, degeneration of the lumbosacral intervertebral disc and sciatica. Tr. 540, 545, 557-558. The ALJ did not, therefore, provide a specific and legitimate reason when she concluded that Dr. Shook's opinion was inconsistent with his own treatment records.

However, the ALJ correctly noted that Dr. Shook's "opinion that Plaintiff could stand and/or walk no more than five minutes at a time is inconsistent with the CDIU investigator's report that the claimant was able to stand for 20 minutes while smoking several cigarettes." Tr. 24, 724. While courts have found that "an ALJ errs when she makes a 'blanket statement' rejecting a doctor's opined limitations based on a CDIU report without explanation or citation to specific evidence in the record," *Donohue v. Berryhill*, 2017 WL 5167549, *6 (W.D. Wash. Nov. 8, 2017) (citing *Yeakey v. Colvin*, 2016 WL 4649653 (W.D. Wash. Sept. 7, 2016)), here the ALJ specifically identified a direct and obvious contradiction. The ALJ therefore properly rejected Dr. Shook's opinion as to Plaintiff's sit/stand limitation on this basis.

In contrast, the ALJ improperly rejected Dr. Shook's opinion regarding Plaintiff's headaches. An ALJ may reject a treating physician's opinion if that opinion is premised on a claimant's subjective complaints, which the ALJ had properly discredited. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ pointed to a single example of "exaggeration," i.e. the profile on a personality assessment inventory performed by Dr. Burns (discussed above), to support the claim that Plaintiff's "self-reports are unreliable." Tr. 24. Again, this citation does not show "a tendency to, at the least, exaggerate her symptoms." Rather, it references the results from a personality profile that suggest a "possibility" of mild exaggeration. The ALJ has not identified any opinions in the

record that suggest Plaintiff was malingering or *actually* exaggerating any symptoms. To the contrary, Dr. Burns, who performed the personality assessment inventory, concluded that Plaintiff did not appear to be exaggerating or malingering twice in his report. Tr. 434, 436. Dr. Brenizer also noted no signs of exaggeration, writing:

> there is no evidence to suggest [Plaintiff] was generally motivated to portray herself as being relatively free of common shortcoming or minor faults. With respect to negative impression management, there is no evidence to suggest that [Plaintiff] was motivated to portray herself in a more negative or pathological light than the clinical picture would warrant. Therefore, [Plaintiff's] profile is considered valid and interpretable.

Tr. 647. Because the ALJ did not properly discredit Plaintiff's subjective complaints of headaches, she cannot reject Dr. Shook's opinion solely because it relied on those subjective complaints. The ALJ therefore failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Shook's opinion about limitations based on Plaintiff's headaches.

3. **Dr. Brenizer, Psy.D**

Dr. Brenizer is an examining psychologist who evaluated Plaintiff in February and March of 2016. Tr. 25. Dr. Brenizer performed several tests and opined that Plaintiff was limited in her ability to work. Tr. 25. For example, Plaintiff was limited in her ability to interact with the public, get along with coworkers, function socially, and display necessary persistence and concentration. Tr. 25. The ALJ gave significant weight to the results of Dr. Brenizer's testing, but little weight to her recommended limitations. The ALJ provided two reasons for giving little weight to the recommendations: (1) Dr. Brenizer did not explain the basis for these limitations, and (2) the limitations were based on unreliable self-reports.

First, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). A physician's report should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Here, Dr. Brenizer's opinion is not brief, conclusory or inadequately supported by clinical findings. While her ultimate opinion in conveyed via checklist, this checklist is supported by an in-depth, twenty-page report that includes results from extensive testing. *See* tr. 633-657. Together, the report and checklist demonstrate how Plaintiff's symptoms translate into specific functional deficits.

Second, to the extent Dr. Brenizer's opinion is based on Plaintiff's self-reports,[4] the ALJ again cites a single page—the result of a Personality Assessment Inventory performed by Dr. Burns, discussed and rejected above—for the proposition that these self- reports are unreliable. Tr. 25, 435. However, as noted above, Dr. Brenizer specifically concluded there was no evidence to suggest that Plaintiff was motivated to portray herself in either a more favorable or more negative light, and therefore the profile was "valid and interpretable." Tr. 647. Again, an ALJ may not reject an "examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008).

Additionally, Dr. Brenizer's opined limitations are not based solely on self-reported symptoms, but also on medical evidence and testing. As noted—and accepted—by the ALJ, Dr.

---

[4] The Court also notes that the rule allowing ALJ's to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnosis will always depend in part on the patient's self-report, as well as the clinician's observations of the patient. But such is the nature of psychiatry.") (internal citation omitted).

Brenizer performed several tests, including the Wechsler Adult Intelligence Test (WAIS-IV) and a Personality Assessment Inventory. Tr. 25, 643. Dr. Brenizer also indicated that she reviewed Plaintiff's medical records, which indicated diagnoses of PTSD and Bipolar 1 Disorder with Anxious Distress. Tr. 643.

The ALJ therefore failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting this opinion.

### 4. Ms. McNeill, MS QMHP

Ms. McNeill is a treating therapist who opined that Plaintiff "has been unable to work or volunteer for years" due to mental health symptoms. Tr. 24, 440. As a Qualified Mental Health Professional, Ms. McNeill is not an acceptable medical source under the Act. *See* 20 C.F.R. § 404.1502. Rather, her testimony is evaluated as an "other source." Other source testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). To discount "other source" testimony, the ALJ must provide reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). However, failure to provide reasons germane to each lay witness may be harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

Here, the ALJ identified three reasons for rejecting Ms. McNeill's testimony: (1) the testimony was "inconsistent with other evidence in the file, including the report of CDIU investigation, indicating that the claimant drives daily and provides care for two special needs

children;" (2) Ms. McNeill was not familiar with SSA standards for determining disability; and (3) Ms. McNeill was not an acceptable medical source. Tr. 25.

As a preliminary matter, the fact that Ms. McNeill is not familiar with SSA standards for determining disability is irrelevant—from the record before the Court, it does not appear that she opined that Plaintiff is disabled under the technical definition of the Act. Rather, Ms. McNeill simply discussed the severity of Plaintiff's symptoms and how those symptoms affect Plaintiff's life. This is competent evidence that an ALJ must take into account. Additionally, the fact that Ms. McNeill is not an acceptable medical source is not an independent reason to reject her opinion. Rather, it simply means that the ALJ need only provide specific and germane reasons, as opposed to clear and convincing ones, for discrediting it.

However, the ALJ also noted that Ms. McNeill's opinion is inconsistent with the CDIU investigation report. Specifically, Ms. McNeill opined that Plaintiff cannot interact or communicate with others consistently and is at times unable to leave her house due to anxiety, while the report indicates "that the claimant drives daily and provides care for two special needs children." Tr. 25. This is a specific and germane reason for rejecting Ms. McNeill's testimony.

## III.    The ALJ's Analysis at Step Two

Plaintiff contends the ALJ erred at step two by failing to categorize Plaintiff's headaches/occipital neuralgia and lumbar degenerative disc disease as severe impairments.

The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.*

A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions.  20 C.F.R. §§ 404.1522(b), 416.922(b). In Social Security Ruling ("SSR") 85-28, the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." 1985 WL 56856, at *3, (Jan. 1, 1985) (quoting 20 C.F.R. 404.1521(a) and 416.921(a)); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. at 153–54). "[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2, (Jan. 1, 1985) (internal quotation omitted). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). When determining the claimant's RFC, the ALJ must consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (citation omitted). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* Therefore, where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers

the limitations posed by the impairment in the RFC, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, Plaintiff has identified two medically determinable impairments that significantly limit her ability to do basic work activities: headaches and lumbar degenerative disc disease. The ALJ dismissed these impairments, concluding that "there is nothing to show that they are more than transient or cause significant vocational limitations." Tr. 19. The Court does not agree. With regard to Plaintiff's headaches, two doctors noted their severity over a two-year period. In 2014, Dr. Laidler noted that Plaintiff suffered from "frequent severe headaches," which he categorized as "occipital neuralgia." Tr. 423. He wrote that these headaches are very common in patients with fibromyalgia and are "very difficult to treat and tend[] to be progressive. These headaches are longstanding and it is unlikely that they will resolve." Tr. 423–24. Two years later, Dr. Shook again noted that Plaintiff suffered from headaches which occurred approximately once per week and lasted up to thirty-six hours at a time. Tr. 24, 692.

With regard to Plaintiff's lumbar degenerative disc disease, Plaintiff reported back pain to various physicians over a span of at least two years. *See, e.g.*, tr. 366, 530, 669.  A March 2015 MRI showed "mild L3-S1 degenerative disc disease and lower lumbar facet arthropathy." Tr. 678. A May 2015 MRI showed "mild annular disc bulge[s] and slight desiccation" at L3-4 and L4-5, and a "slight disc bulge with a small tear in the posterior annulus at L5-S1." Tr. 561. Plaintiff's treating physician opined that she was limited to sitting and/or standing for five minutes at a time, for less than two hours in an eight-hour day. Tr. 691.

These impairments are more than slight abnormalities, they significantly limit Plaintiff's physical ability to do basic work activities, and the ALJ erred by failing to categorize them as

severe. This error is not harmless because the ALJ failed to include these limitation's in Plaintiff's RFC.

## IV.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that the Court should remand the case for an immediate award of benefits because the evidence in the record directs a finding of disabled. The Court does not agree. Instead, the Court agrees with the Commissioner that the CDIU report provides at least a slight uncertainty about whether Plaintiff is actually disabled. Moreover, because Plaintiff did not object to the ALJ's conclusion that Plaintiff failed to overcome the presumption of non-disability created by an earlier unfavorable decision, the issue is still outstanding.  Further administrative proceedings are therefore necessary.

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative

proceedings.

IT IS SO ORDERED.


Dated this ___ day of _____, 2019.


MARCO A. HERNÁNDEZ
United States District Judge